IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PHILLIP E. SMITH,<br><br>                Plaintiff,<br><br>vs.<br><br>CITY OF GRAND ISLAND, a political subdivision of the State of Nebraska; GRAND ISLAND POLICE DEPARTMENT, in its official capacity; DEAN ELLIOTT, individually and in his official capacity as patrol captain and supervisor of the Grand Island police department; JUSTIN ROEHRICH, individually and in his official capacity as an employee of the city of Grand Island and an officer with the Grand Island police department; BRADLEY BROOKS, individually and in his official capacity as an employee of the city of Grand Island and sergeant with the Grand Island police department; and JOSE RODRIGUEZ, individually and in his official capacity as an employee of the city of Grand Island and an officer with the Grand Island police department;<br><br>                Defendants. | **8:19CV473**<br><br>**MEMORANDUM**<br>**AND ORDER** |

Plaintiff Phillip E. Smith is a federal prisoner who is proceeding pro se and who is incarcerated at the United States Penitentiary in Leavenworth, Kansas. The court has granted Plaintiff permission to proceed in forma pauperis (Filing 8), and the court now conducts an initial review of the Complaint (Filing 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

# I. SUMMARY OF COMPLAINT

Plaintiff sues three Grand Island, Nebraska, police officers, their patrol captain, the City of Grand Island, and the Grand Island Police Department for money damages resulting from a traffic stop involving excessive force, a warrantless search, and a warrantless seizure of Plaintiff's property.

Plaintiff alleges[1] that on October 31, 2017, at approximately 9:25 p.m., Plaintiff was driving his car in Grand Island when he noticed a police car driving in the same vicinity. Plaintiff turned into a gas station, and the police car, with lights activated, pulled up behind Plaintiff's car while it was parked at the gas pump. Defendant Officer Roehrich[2] exited the patrol car and approached Plaintiff with his hand on his service weapon. Panicking, Plaintiff ran 15 feet from the front of his car. Roehrich yelled, "if you don't stop I'm going to shoot you." Plaintiff complied. Plaintiff then answered a cell phone call, after which Roehrich ordered Plaintiff to get down on the ground with his hands on his head. Once Plaintiff reached the ground, Roehrich tackled Plaintiff, placed his knee in the middle of Plaintiff's back, and handcuffed him. After Plaintiff said, "oh so since there's no one around you're gonna rough me up huh," Roehrich allegedly ground his knee into the middle of Plaintiff's back and stomped on Plaintiff's right shoulder blade with the heel of his boot.

At that point, Defendants Rodriguez and Brooks arrived. Officer Rodriguez took Plaintiff's cell phone, and Officer Brooks helped Roehrich pick Plaintiff up from the ground. Officers Brooks and Roehrich then subjected Plaintiff to a "vigorous search," including taking off his shoes and socks and pulling Plaintiff's shorts down so that his underwear and buttocks were exposed. After Plaintiff was escorted to Roehrich's patrol

---

[1] Plaintiff's factual allegations can be found in Filing 1 at CM/ECF pp. 26-38.

[2] Plaintiff recognized Officer Roehrich from "several previous encounters," one which involved Roehrich and two other officers "slamm[ing]" Plaintiff "off [his] feet in the air on the hood of [his] car in front of my fiancée . . . and our three children." (Filing 1 at CM/ECF p. 28.)

2

car, Officers Roehrich and Brooks searched Plaintiff's car and trunk without Plaintiff's consent and without a warrant.

After the search was complete, Plaintiff requested that Officer Roehrich take him to the hospital because he thought his shoulder was broken. At the Saint Francis Medical Center in Grand Island, Plaintiff was diagnosed with a broken right clavicle, and was directed to consult an orthopedic physician the next day. Officer Roehrich then transported Plaintiff to Hall County Jail for booking for alleged traffic violations. Plaintiff posted bail the next day, but his cell phone was not returned to him because it was "being confi[s]cated pending further investigation." Ultimately, Plaintiff alleges he was never charged with a crime.

On September 25, 2018, Plaintiff underwent surgery to repair his broken clavicle at the Providence Medical Center in Kansas City, Kansas, which involved insertion of a titanium clavicle plate and six screws. Plaintiff alleges that he sustained nerve and blood-vessel damage. (Filing 1 at CM/ECF pp. 62-63.)

Plaintiff claims that he filed complaints about the incident with the Grand Island Police Department, the Hall County Attorney's Office, the City of Grand Island, the Nebraska Crime Commission, the Nebraska Attorney General's Office, the Nebraska Ombudsman, United States Senator Deb Fischer, Nebraska Senator Ernie Chambers, the NAACP, and the Nebraska ACLU. (Filing 1 at CM/ECF p. 82.)

In this court, Plaintiff asserts claims under 42 U.S.C. § 1983 alleging violations of the Fourth, Fifth, and Fourteenth Amendments based on unlawful search and seizure, excessive force, false arrest, just compensation for the taking of Plaintiff's property, and deprivation of liberty and property without due process. Plaintiff also alleges claims under the Nebraska Political Subdivision Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to -927 (Westlaw 2020), and under state law for intentional or negligent infliction of emotional distress, conversion, negligence, negligent supervision, assault, and civil conspiracy to protect Officer Roehrich via false statements made in the police reports documenting the incident. (Filing 1 at CM/ECF p. 15.) Plaintiff alleges, and submits a copy of, a tort claim he filed with the Clerk of Hall County, Nebraska, on April 30,

3

2018, asserting claims for damages arising from this incident. (Filing 1 at CM/ECF pp. 84-96.) Plaintiff claims that the City has not acted upon his claim. (Filing 1 at CM/ECF p. 16.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Section 1983 Claims

#### 1. Grand Island Police Department Not Proper Defendant

Plaintiff's section 1983 claims may not be asserted against the Grand Island Police Department, and therefore must be dismissed, because "it is well settled that municipal police departments, sheriff's offices, and jails are not generally considered persons within the meaning of 42 U.S.C. § 1983 and thus not amenable to suit." *Ferrell v. Williams Cty. Sheriffs Office*, No. 4:14-CV-131, 2014 WL 6453601, at *2 (D.N.D. Nov. 4, 2014). *See also De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (unpublished) (county jail and sheriff department not subject to suit under § 1983); *Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (city police department and paramedic services "are not juridical entities suable as such. . . . [t]hey are simply departments or subdivisions of the City government").

#### 2. Claims Against Police Officers in Official Capacities

Plaintiff's section 1983 claims against Officers Roehrich, Brooks, Rodriguez, and Elliott (patrol captain and supervisor of Grand Island Police Department) in their official capacities are actually asserted against the City of Grand Island. Therefore, such claims will be dismissed as duplicative of Plaintiff's claims against the City of Grand Island. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (proper to dismiss claims against city police officer sued in official capacity as redundant of claims against city); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("A suit against a public employee in his or her official capacity is merely a suit against the public employer."); *Eagle v. Morgan*, 88 F.3d 620, 629 n.5 (8th Cir. 1996) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

### 3. Claims Against Police Officers in Individual Capacities

#### a. Unlawful Search & Seizure

Plaintiff claims that the Defendant police officers unlawfully, and without a warrant, searched his car and trunk and seized his cell phone. The Fourth Amendment, applicable to the States through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. A 42 U.S.C. § 1983 claim based on the Fourth Amendment requires a plaintiff to demonstrate that a search or seizure occurred, and the search or seizure was unreasonable. *Clark v. Clark*, 926 F.3d 972, 977 (8th Cir. 2019).

"Warrantless searches are presumptively unreasonable absent some exception to the warrant requirement." *United States v. Kuenstler*, 325 F.3d 1015, 1021 (8th Cir. 2003). However, when police have probable cause to search a vehicle, the Fourth Amendment does not require a warrant. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Once probable cause is established to search a vehicle, officers are justified in searching every part of the vehicle and its contents, including its trunk, that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982); *United States v. Eisenberg*, 807 F.2d 1446, 1452 (8th Cir. 1986).

Plaintiff has plausibly alleged that Defendants Roehrich and Brooks subjected him to an unlawful warrantless search of his car and trunk following an investigatory stop related to alleged traffic violations. Because the existence of probable cause to perform a search depends upon the totality of the circumstances and is "'not readily, or even usefully, reduced to a neat set of legal rules,'" *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Gates*, 462 U.S. at 232), whether or not the officers' search was actually

6

supported by probable cause is not a matter to be determined at this early stage. Therefore, this claim may proceed to service of process as against Defendants Roehrich and Brooks in their individual capacities, as well as Defendant Elliott individually because he is alleged to be the patrol captain and supervisor of the Grand Island Police Department. *Thiel v. Korte*, 954 F.3d 1125 (8th Cir. 2020) ("supervisors . . . can be held individually liable for . . . failing to supervise or train officers").

As to the alleged seizure of Plaintiff's cell phone, a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (internal quotation marks and citation omitted). A warrantless seizure of one's property does not violate the Fourth Amendment if it is supported by a warrant "exception," such as the plain-view doctrine, exigent circumstances, or consent. *PPS, Inc. v. Faulkner Cty., Ark.*, 630 F.3d 1098, 1102 (8th Cir. 2011). The plain-view doctrine "allows officers to seize contraband or other evidence of a crime in limited situations" without a warrant, such as when "they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010).

Here, Plaintiff has clearly alleged that Defendant Rodriguez seized Plaintiff's cell phone at the scene without a warrant, and the phone was never returned to him, even after Plaintiff was released from custody and charges were never filed. Again, while further factual development is necessary to determine whether a warrant "exception" actually applied, Plaintiff has alleged enough facts to state a claim for an unlawful seizure of his personal property as against Defendants Rodriguez and Elliott in their individual capacities. The court shall order service of process accordingly.

### b. <u>Excessive Force</u>

"An excessive force claim 'is governed by the Fourth Amendment's prohibition against unreasonable seizures,'" *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)), and "is evaluated

7

under the reasonableness standard of the Fourth Amendment." *Coker v. Arkansas State Police*, 734 F.3d 838, 842 (8th Cir. 2013) (internal quotation and citation omitted).

To show a Fourth Amendment violation by the use of force, a plaintiff must establish (1) that he was "seized"[3] within the meaning of the Fourth Amendment and (2) that an officer's use of force was objectively unreasonable[4] given the facts and circumstances of the incident as "judged from the perspective of a reasonable officer on the scene." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013) (internal quotation and citation omitted); *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1209 (8th Cir. 2013).

Plaintiff alleges that after he was handcuffed while lying on the ground, Officer Roehrich, with no apparent reason, ground his foot into Plaintiff's back and stomped on his shoulder, causing a broken clavicle that had to be surgically repaired. In light of the liberal construction afforded to pro se litigants' pleadings, the court finds that Plaintiff has stated a viable excessive-force claim against Defendant Roehrich in his

---

[3] To constitute a "seizure" under the Fourth Amendment, there must be a willful or intentional application of physical force, as determined by the "officer's objective behavior," or the plaintiff's submission to the police officer's show of authority. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1208 (8th Cir. 2013). A seizure must "restrain[ ] . . . freedom of movement," but the "restraint need not actually succeed in stopping or holding [the person] even for an instant." *Id*. (internal quotations, alterations, and citations omitted) (police officer's "bull rush" at plaintiff was "more than enough physical force to effect a seizure under the Fourth Amendment" (citing cases)).

[4] "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006) (internal citations and quotations omitted); *see also Rohrbough v. Hall*, No. 4:07CV00996, 2008 WL 4722742, at *4 (E.D. Mo. Oct. 23, 2008) ("The Court must consider factors such as the severity of the suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or attempting to evade arrest.").

individual capacity, as he was the officer alleged to be directly involved in applying force to Plaintiff, and against Defendant Elliott.

### c. False Arrest

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (internal quotation marks and citation omitted). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* (internal quotation marks and citation omitted). "To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest." *Id.* (internal quotation marks and citation omitted).

Construing Plaintiff's allegations liberally, the court concludes that Plaintiff has stated a plausible claim of wrongful arrest in violation of the Fourth Amendment because it is unclear what offense Plaintiff committed or what facts and circumstances existed that could have reasonably led the Defendants to believe he committed an offense. Accordingly, the court will order service of process on all of the Defendants at the scene in their individual capacities and upon Defendant Elliott. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) (plaintiff alleging arrest without probable cause could bring claim for wrongful arrest under Fourth Amendment).

### d. Just Compensation for Taking of Plaintiff's Property

The Fifth Amendment provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. Amend. V. Because nothing in Plaintiff's Complaint suggests that his personal property was taken for a public purpose, the Takings Clause is not implicated here, and Plaintiff has failed to state a claim under the Fifth Amendment Takings Clause. *Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) ("Seizure of convicted prisoners and their personal property are not the kinds of takings that are prohibited by the Fifth Amendment."); *Paalan v. United States*, 120 Fed. App'x 817, 822-823 (Fed. Cir. 2005) ("[N]either the seizure of items of

9

evidentiary value nor the retention of personal property that Mr. Paalan was not allowed to retain during his incarceration constituted takings for which the government was required to pay just compensation."); *Adams v. Corr. Emergency Response Team*, No. 19-CV-3301, 2019 WL 4074653, at *3 n.6 (E.D. Pa. Aug. 28, 2019) (Takings Clause of Fifth Amendment not implicated when complaint failed to allege that prisoner's personal property—clothing, shoes, jewelry, mail, and notes—was taken for a public purpose); *Hines v. Ferguson*, No. 19-CV-3139, 2019 WL 3504239, at *3 (E.D. Pa. July 31, 2019) (same); *Cohea v. California Dep't of Corr. & Rehab.*, No. CV 1-07-00469, 2009 WL 498289, at *5 (E.D. Cal. Feb. 26, 2009) (prisoner failed to state Fifth Amendment Takings claim when he failed to allege that confiscated property was taken for any public use).

Accordingly, this claim will be dismissed for failure to state a claim upon which relief can be granted.

### e. Due Process

Plaintiff claims that the Defendant officers deprived him of his property and liberty without due process of law. The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "This clause has two components: the procedural due process and the substantive due process components." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965 (8th Cir. 2015) (internal quotation marks and citations omitted).

To the extent Plaintiff complains that the Defendants' actions violated his right to substantive due process, he has failed to state a claim upon which relief can be granted. Because Plaintiff's claims are covered by the Fourth Amendment, his claims "must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). *See also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under

10

the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (emphasis in original)); *Garcia-Torres v. Holder*, 660 F.3d 333, 337 (8th Cir. 2011) (when claim is covered by Fourth Amendment, substantive-due-process analysis is inappropriate). Therefore, Plaintiff's substantive-due-process claims will be dismissed.

"To establish a violation of procedural due process, [Plaintiff] must prove (1) [the defendants] deprived [Plaintiff] of life, liberty, or property; and (2) [the defendants] deprived [Plaintiff] of that interest without sufficient process." *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004) (internal quotation marks and citation omitted). Here, Plaintiff alleges facts suggesting two distinct deprivations of Plaintiff's property: the seizure of Plaintiff's cell phone incident to his arrest and the Defendants' refusal to return Plaintiff's property when he was released from custody and when the criminal charges against him were not pursued. This is enough to state a procedural-due-process claim. *See Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011) (district court erred in granting defendants' motion for summary judgment on procedural-due-process claim when defendants refused to return arrestee-plaintiff's handgun and ammunition that were seized incident to arrest, but not returned after criminal charges against plaintiff were dismissed). Accordingly, the court will order service of process upon Defendant Officer Rodriguez, who initially seized Plaintiff's personal property, and upon Defendant Elliott.

### 4. Claims Against City of Grand Island

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 691 (1978)).

An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental "custom," a plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

To hold the City of Grand Island liable under section 1983 for failure to properly train and supervise its officers, Plaintiff must prove that the City's failure to train or supervise "'amounts to deliberate indifference to the rights of persons with whom [the officers came] into contact.'" *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Deliberate indifference" is a "stringent standard of fault" that can result in liability with proof of either (1) a pattern of similar constitutional violations or (2) "the need for more supervision or training was 'so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [City] can reasonably be said to have been deliberately indifferent to the need.'" *Doe*, 920 F.3d at 1189 (quoting *Canton*, 489 U.S. at 390). In either case, the City's failure to train or supervise must be "the moving force [behind] the constitutional violation." *Doe*, 920 F.3d at 1189 (quoting *Canton*, 489 U.S. at 389).

12

Here, the Plaintiff repeatedly alleges[5] that Defendant Dean Elliott, patrol captain and supervisor of the Grand Island Police Department, and the City of Grand Island failed to properly train and supervise the Defendants and failed to promulgate and implement procedures and policies regarding vehicle searches, seizures of property, and use of force, and that such failures caused the violation of Plaintiff's civil rights. Construed liberally, these allegations are sufficient to state a claim against the City of Grand Island, and this claim may proceed to service of process.

## B.  PSTCA Claims Against City of Grand Island

"Where a claim against a political subdivision is based upon acts or omissions of an employee occurring within the scope of employment, it is governed by the provisions of the [Nebraska Political Subdivisions Tort Claims Act ("PSTCA"), Neb. Rev. Stat. §§ 13-901 to 13-928 (Westlaw 2020)]." *Britton v. City of Crawford*, 803 N.W.2d 508, 514 (Neb. 2011).[6]

---

[5] Plaintiff alleges that Defendant Elliott "knew or should have known that the failure to promulgate and implement such procedures, policies, or customs caused the perpetuation of procedures policies or customs leading directly to the violations of civil rights" (Filing 1 ¶ 5); the "City of grand island implicitly or explicitly adopted and implemented a careless and reckless policy, custom, or practice of allowing employees of the grand island police department to conduct illegal searches of vehicles" (Filing 1 ¶ 36); the City of Grand Island "adopted and implemented careless and reckless policies, customs, or practices" that allowed police-department employees "to seize property without lawful justification" (Filing 1 ¶ 35); the failure of Defendant Elliott and the City of Grand Island to adequately train and supervise the Defendant officers "amounts to deliberate indifference to the rights of the plaintiff to be free from excessive force and unreasonable seizures" (Filing 1 ¶ 37); "patrol captain Dean Elliott . . . , the grand island police department negligently supervised Defendants Roehrich, Brooks, and Rodriguez by failing to provide proper training and outline proper procedure in conducting searches and seizures" (Filing 1 ¶ 52); and "Dean Elliott, in his capacity as supervisor of the grand island police department, and the Defendant the city of grand island, has adopted policies, procedures, practices, or customs within the grand island police department that allow, among other things, the use of excessive force" (Filing 1 ¶ 49).

[6] The PSTCA states that "no suit shall be maintained against [a] political subdivision or its officers, agents, or employees on any tort claim except to the extent,

13

> The PSTCA reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision. It is the *exclusive means* by which a tort claim may be maintained against a political subdivision or its employees. Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver.

*Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007) (footnotes omitted & emphasis added).

The PSTCA covers Plaintiff's claims against the City of Grand Island because Plaintiff does not allege that the City police officers acted outside the scope of their employment at the time of the alleged assault, battery, false arrest, and negligence. *Britton*, 803 N.W.2d at 514 & 518 ("[Plaintiff] does not plead any facts that would explain how the City would be liable without the connection of the employment relationship between [the police officer and conservation officer who shot the plaintiff] and the City. Therefore, the City is protected by sovereign immunity.").[7]

The PSTCA authorizes tort claims against municipalities, Neb. Rev. Stat. § 13-908 (Westlaw 2020), subject to certain exceptions, including "[a]ny claim arising out of assault, battery, false arrest . . . ," sometimes referred to as the intentional-torts exception. Neb. Rev. Stat. § 13-910(7). This exception "does not merely bar claims for assault or battery; in sweeping language it excludes any claim *arising out of* assault or

---

and only to the extent, provided by the Political Subdivisions Tort Claims Act." Neb. Rev. Stat. § 13-902. Defendant City of Grand Island is a political subdivision of the State of Nebraska. Neb. Rev. Stat. § 13-903(1).

[7] "Every claim against a political subdivision permitted under the Political Subdivisions Tort Claims Act shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body," which is defined as the "clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision." Neb. Rev. Stat. §§ 13-905 & 13-919. Here, Plaintiff specifically alleges that he filed a tort claim with the City of Grand Island within a year of the incident, and he has attached to his Complaint evidence of that tort claim.

14

battery. We read this provision to cover claims like [the plaintiff's] that sound in negligence but stem from a battery committed by a Government employee." *Britton*, 803 N.W.2d at 517 (internal quotation marks and citation omitted; emphasis added).

Plaintiff alleges that the City of Grand Island negligently trained and supervised its police officers, resulting in injuries that arose out of the officers' intentional, physical contact with Plaintiff without his consent. This constitutes "arising out of . . . battery" within the meaning of Neb. Rev. Stat. § 13-910(7). Although Plaintiff's claims against the City are also "grounded in negligence, . . . the alleged negligence was inextricably linked to a battery, and . . . [such claims are] thus barred by the Nebraska Political Subdivisions Tort Claims Act." *Westcott v. City of Omaha*, 901 F.2d 1486, 1490 (8th Cir. 1990) (in action against city for death of decedent, who was shot by police officer, district court correctly dismissed action when facts alleged—although cast as a negligence claim—amounted to battery under Nebraska law, and NPSTCA allows municipalities to "plead the defense of sovereign immunity to avoid any state-law claims arising out of an assault or battery"); *see also Policky v. City of Seward, Neb*., 433 F. Supp. 2d 1013, 1027 (D. Neb. 2006) (city was immune from suit under NPSTCA when complaint alleged city was negligent in failing to properly train officer as to "the proper procedures when using a taser gun, restraining Plaintiff with unreasonable force, and . . . how to determine what facts and circumstances merit the use of force" because city's alleged negligent failure to train was directly related to officer's employment as police officer and to his alleged intentional torts of unlawfully arresting and assaulting plaintiff); *Johnson v. State*, 700 N.W.2d 620 (Neb. 2005) (intentional torts exception in State Tort Claims Act—which was identical to the PSTCA exception in Neb. Rev. Stat. § 13-910(7)—encompassed negligence claim asserted against state for failure to supervise, hire, and discipline because such claim arose out of assault and battery by state correctional employee, and plaintiff simply reframed the claim); *Hawkins v. Gage Cty.*, No. 4:13CV3009, 2013 WL 12073803, at *19 (D. Neb. Sept. 3, 2013), *aff'd*, 759 F.3d 951 (8th Cir. 2014) ("The creative use of negligence pleading cannot resurrect a claim that is otherwise barred by the intentional tort exception of the Nebraska Political Subdivisions Tort Claims Act.").

15

Therefore, Plaintiff's state-law tort claims against the City of Grand Island must be dismissed as barred by the PSTCA.

## C.  State Tort Claims Against Officers in Individual Capacities

Liberally construing the Complaint, Plaintiff may have state-law claims against Defendants Elliott, Roehrich, Brooks, and Rodriguez in their individual capacities, over which the court may choose to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 if Plaintiff's federal claims survive motion practice.

## IV.  CONCLUSION

Several of Plaintiff's claims may proceed to service of process while others will be dismissed, as specified below. However, the court cautions Plaintiff that this is only a preliminary determination based on the allegations found within the Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

IT IS ORDERED:

1.     Plaintiff's 42 U.S.C. § 1983 claims against the Grand Island Police Department are dismissed without prejudice because the Department is not a person within the meaning of § 1983 and is thus not amenable to suit. The Clerk of Court shall remove the Grand Island Police Department as a defendant in this case.

2.     Plaintiff's 42 U.S.C. § 1983 claims against Defendants Roehrich, Brooks, Rodriguez, and Elliott in their official capacities are dismissed without prejudice as duplicative of Plaintiff's claims against the City of Grand Island. The Clerk of Court shall remove the "official capacity" designation from these Defendants in the caption of this case.

3.     Plaintiff's claim under the Fifth Amendment Takings Clause is dismissed without prejudice for failure to state a claim upon which relief can be granted.

4.     Plaintiff's substantive-due-process claim is dismissed without prejudice for failure to state a claim upon which relief can be granted.

5. Plaintiff's state-law tort claims against the City of Grand Island are dismissed as barred by Nebraska's Political Subdivisions Tort Claims Act.

6. The following claims may proceed to service of process: Plaintiff's Fourth Amendment unlawful-search claim against Defendants Roehrich, Brooks, and Elliott in their individual capacities; Fourth Amendment unlawful-seizure claim against Defendants Rodriguez and Elliott in their individual capacities; Fourth Amendment excessive-force claim against Defendants Roehrich and Elliott in their individual capacities; Fourth Amendment wrongful-arrest claim against Defendants Roehrich, Brooks, Rodriguez, and Elliott in their individual capacities; procedural-due-process claim against Defendants Rodriguez and Elliott in their individual capacities; and 42 U.S.C. § 1983 claim against the City of Grand Island for failure to properly train and supervise its officers.

7. At this time, the court will not dismiss any state-law claims Plaintiff might have against Defendants Elliott, Roehrich, Brooks, and Rodriguez in their individual capacities pending motion practice involving Plaintiff's federal claims, after which the court may or may not choose to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8. The Clerk of the Court is directed to complete and issue summonses for Defendants Elliott, Roehrich, Brooks, and Rodriguez in their individual capacities only and for the City of Grand Island. The City of Grand Island may be served at the City of Grand Island City Hall, 100 East First Street, Grand Island, NE 68801. Defendants Elliott, Roehrich, Brooks, and Rodriguez may be served in their individual capacities at the office of the City of Grand Island Police Department, Law Enforcement Center, 111 Public Safety Drive, Grand Island, NE 68801. The Clerk of the Court is further directed to deliver the summonses, the necessary USM-285 Forms, copies of Plaintiff's Complaint (Filing 1), and copies of this Memorandum and Order to the Marshals Service for service of process on Defendants. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery

service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Westlaw 2020).[8]

9. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

10. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

11. The Clerk of the Court is directed to set the following pro se case management deadline: August 3, 2020: check for completion of service of process.

Dated this 5th day of May, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

---

[8] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson,* 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g., Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).