IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PHILLIP E. SMITH,<br><br>               Plaintiff,<br><br>   vs.<br><br>CITY OF GRAND ISLAND, a political subdivision of the State of Nebraska; DEAN ELLIOTT, individually as patrol captain and supervisor of the Grand Island police department; JUSTIN ROEHRICH, individually as an employee of the city of Grand Island and an officer with the Grand Island police department; BRADLEY BROOKS, individually as an employee of the city of Grand Island and sergeant with the Grand Island police department; and JOSE RODRIGUEZ, individually as an employee of the city of Grand Island and an officer with the Grand Island police department;<br><br>               Defendants. | **8:19CV473**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' Motion for Summary Judgment. Filing No. 68.  Also before the Court is Defendants' Motion to Strike, Filing No. 88.  For the reasons that follow, the Motion for Summary Judgment is granted, the Motion to Strike will be denied as moot.

## I. BACKGROUND

Plaintiff Phillip E. Smith ("Plaintiff") is an inmate at F.C.I. Beckley in Beaver, West Virginia.  Filing No. 73.  He brings this action under 42 U.S.C. § 1983 against Defendants City of Grand Island, Dean Elliott, Justin Roehrich, Bradley Brooks, and Jose Rodriguez all officers of the Grand Island Police Department ("GIPD").  Plaintiff alleges violations of

1

the Fourth, Fifth, and Fourteenth Amendments based on unlawful search and seizure, excessive force, false arrest, just compensation for the taking of Plaintiff's property, and deprivation of liberty and property without due process.  *See* Filing No. 1, Filing No. 9. After initial review, the Court permitted the following of Plaintiff's claims to proceed:

- Defendants Roehrich, Brooks, and Elliott unlawfully searched Plaintiff's vehicle in violation of the Fourth Amendment;

- Defendants Rodriguez and Elliott improperly seized Plaintiff's phone in violation of the Fourth Amendment;

- Defendants Roehrich and Elliott applied excessive force in violation of the Fourth Amendment;

- Defendants Roehrich, Brooks, Rodriguez, and Elliott wrongfully arrested Plaintiff in violation of the Fourth Amendment;

- Defendants Rodriguez and Elliott deprived Plaintiff of due process;

- Defendant City of Grand Island failed to properly train and supervise its officers; and

- Corresponding state law claims if Plaintiff's federal claims survived motion practice.

Filing No. 9 at 16, 17.

## II. SUMMARY JUDGMENT PROCEDURE

### A.  Facts Considered on Summary Judgment

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

2

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This Court's local rules[1] further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining in original). "The statement must not contain legal conclusions." *Id*.

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id*.

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion" for summary judgment. NECivR 56.1(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's

---

[1] The Court's applied its local civil rules in effect at the time Defendants filed their Motion for Summary Judgment. NECivR 56.1 has been amended, effective December 1, 2022. Both versions of the Court's local rules can be accessed at: https://www.ned.uscourts.gov/attorney/local-rules

statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (underlining omitted).

In accordance with the Court's local rules, Defendants' brief, Filing No. 69, includes "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1).

Plaintiff did not directly respond to any of Defendants' numbered statements of fact. Accordingly, those facts are considered admitted unless otherwise contained in the defendant's verified factual submissions. *See* NECivR 56.1(b). Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g). To the extent admissible, the Court has considered Plaintiff's Index in Opposition to Summary Judgment, Filing No. 82. However, the Court has not considered Plaintiff's legal conclusions and arguments asserted as facts because such statements are not admissible to oppose summary judgment.

**B. Plaintiff's Evidence Considered on Summary Judgment**

The Court first considers which, if any, of Plaintiff's evidence can be considered. Defendants filed a Motion to Strike, Filing No. 88, Plaintiff's Index of Evidence, Filing No. 82. Alternatively, Defendants ask the Court to disregard Plaintiff's evidence as inadmissible. The Court will not grant the Motion to Strike wholesale, but cannot consider much of Plaintiff's evidence because, as addressed in the Discussion below, it is either irrelevant, inadmissible, or lacks foundation. For example, Plaintiff's mother, Jacquelyn Bullock, testified that she has power of attorney for Plaintiff and reviewed Plaintiff's medical records and believed "that events are accurate as written as to the occurrences

in this matter." Filing No. 82 at 8.  However, her affidavit lacks any indication she was present for the incident or treatment and lacks any attestation about her medical credentials.

In support of his opposition, Plaintiff's brief also cites frequently to his unverified Complaint.  However, allegations in an unverified complaint are not evidence and cannot be used to oppose summary judgment.  *See* Fed. R. Civ. P. 56(c)(1); *see also Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007) ("The party opposing summary judgment cannot rest solely on the pleadings."); *Tweeton v. Frandrup*, 287 F. App'x 541 (8th Cir. 2008) (per curiam) ("[B]ecause his complaint was unverified, it could not be considered as such evidence."); *Metzsch v. Avaya, Inc.*, 159 F. App'x 736, 737 (8th Cir. 2005) (per curiam) ("[O]nly a verified complaint is the equivalent of an affidavit for purposes of summary judgment.").

Plaintiff also offers several videos and other documentary evidence that lack authentication.  "An affidavit must identify and authenticate any documents offered as evidence."  NECivR 7.1(b)(2)(C); *see also* Fed. R. Evid. 901; *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) ("In light of the lack of affidavits supporting [plaintiff's] submissions, we conclude the district court neither abused its discretion nor committed any error by striking [plaintiff's] unauthenticated and inadmissible exhibits.").  Plaintiff did not attempt to authenticate any of the evidence he offered.  Accordingly, the Court cannot consider this evidence.

**C. Relevant Undisputed Material Facts**

Based on the discussion above, the following are the statements of undisputed facts that are supported by admissible evidence and pinpoint citations to the record, and have either been admitted directly or by rule:

1.     On October 31, 2017, Officer Roehrich was on duty for GIPD when he observed a white Cadillac around 9:00 p.m.  Filing No. 70-2 at 2 ¶ 5.  Officer Roehrich ran the license plate through the computer system in his cruiser, which indicated the license plate was registered to a different type of vehicle—not a white Cadillac.  Filing No. 70-2 at 2 ¶ 5.

2.     Based on the information from his computer system, Officer Roehrich concluded the improper license plates on the Cadillac amounted to a violation of state law.  Filing No. 70-2 at 2 ¶ 5; *see also* Neb. Rev. Stat. § 60-399.

3.     Officer Roehrich maneuvered his cruiser so that he was trailing the Cadillac to initiate a traffic stop.  Filing No. 70-2 at 2 ¶¶ 5–6; Filing No. 70-2 at 10.  The Cadillac turned into the parking lot of a Pump & Pantry gas station along North Broadwell Avenue in Grand Island, Nebraska.  Filing No. 70-2 at 2 ¶ 6; Filing No. 70-2 at 10.  Officer Roehrich followed the Cadillac, activated the overhead lights on his cruiser, and parked right behind the Cadillac facing south in a lane between the gas pumps and convenience store entrance.  Filing No. 70-2 at 2 ¶ 6; Roehrich Rec.[2] at 21:03:021.

---

[2] Defendants submitted several video and audio recordings from Officers Roehrich, Brooks, and Rodriguez in support of their Motion for Summary Judgment.  The recordings were placed on separate CDs and hand-delivered to the Court and were mailed to Plaintiff at both the addresses he has used in these proceedings at USP-Leavenworth and FCI Beckley, *see* Filing No. 70 at 3.  Defendants labeled the recordings as exhibits to each officer's affidavit, *see* Filing No. 70 1–2.  For clarity in this Memorandum and Order, the Court refers to each audio recording by the name of the officer who submitted and authenticated it, i.e., "Roehrich Rec."  The time stamp referenced is to the files with combined audio and video.

4.      The driver did not stay in the Cadillac but exited the vehicle and began walking away toward the store.  Filing No. 70-2 at 2 ¶ 6; Roehrich Rec. at 21:03:11.  As the driver exited, Officer Roehrich recognized him to be Plaintiff Phillip Smith.  Filing No. 70-2 at 2 ¶ 5.

5.      GIPD officers had multiple previous encounters with Plaintiff in the months leading up to that evening, including five in which he attempted to flee and four of which resulted in drug-related charges.  Filing No. 70-2 at 4 ¶ 16.  More specifically, Officer Roehrich had multiple incidents with Plaintiff, including several in which Plaintiff attempted to flee, was non-compliant, and/or later discovered to be in possession of drug paraphernalia.  Filing No. 70-2 at 4–5 ¶¶ 16–17.  Roehrich opined that, based on his experience with Plaintiff, Plaintiff often acted in a non-compliant, difficult, and belligerent manner during these encounters.  Filing No. 70-2 at 4–5 ¶ 17.

6.      The video recording shows that when Plaintiff exited the Cadillac and began walking away, Officer Roehrich can be heard stating: "Phillip, get back here.  Get back here.  Stop.  Stop."  Filing No. 70-2 at 2 ¶ 7; Roehrich Rec. at 21:03:14.

7.      Plaintiff did not respond to Officer Roehrich's statement and ran away toward the south side of the gas station.  Plaintiff tried to return to his feet after stumbling but ultimately came to a stop on the ground.  Filing No. 70-2 at 2 ¶¶ 7–8; Roehrich Rec. at 21:03:17.

8.      Officer Roehrich immediately advised Plaintiff to keep his hands out multiple times, then stated: "We're going to wait for another officer."  Roehrich Rec. at 21:03:38.  He then informed Plaintiff of the problem with the Cadillac's license plates.  Filing No. 70-2 at 2 ¶ 8; Roehrich Rec. at 21:03:45.

7

9.      Officer Roehrich then reiterated his decision to wait: "As soon as another officer gets here, we're gonna go from there—we'll put you in handcuffs and we'll move from there."  Filing No. 70-2 at 2 ¶ 8;  Roehrich Rec. at 21:03:50.  Officer Roehrich contacted other officers to determine how long it would be.  *See* Filing No. 70-2 at 2 ¶ 8; Roehrich Rec. at 21:03:59.

10.     Around this point the cell phone Plaintiff was carrying began to ring.  Filing No. 70-2 at 2–3 ¶ 9; Roehrich Rec. at 21:04:17.  Officer Roehrich directed Plaintiff to "just let it ring, let it ring, keep your arms out."  Filing No. 70-2 at 2–3 ¶ 9; Roehrich Rec. at 21:04:20.

11.     Plaintiff did not appear to comply with this instruction either—instead, he moved his hands, answered the phone, and began a conversation with the caller.  Filing No. 70-2 at 2–3 ¶ 9; Roehrich Rec. at 21:04:21.  Officer Roehrich communicated with dispatch and officers while Plaintiff continued to ignore instructions by speaking on the phone.  Filing No. 70-2 at 2–3; Roehrich Rec. at 21:04:27 to 21:05:13.

12.     As these conversations ensued, Sergeant Jason Allan arrived.  Filing No. 70-2 at 3 ¶ 10; Roehrich Rec. at 21:05:13.  Officer Roehrich again informed Plaintiff why he pulled the vehicle over, as the other officer informed Officer Rodriguez where they were at on the property.  Filing No. 70-2 at 3 ¶ 10; Roehrich Rec. at 21:05:39.

13.     Officer Rodriguez then pulled up from the rear of the building, and by that point, Officer Roehrich and Sergeant Allan had handcuffed Plaintiff.  Filing No. 70-4 at 2 ¶ 6; Rodriguez Rec. at 21:05:51:20.  Plaintiff was still on the phone when this occurred. Filing No. 70-4 at 2 ¶ 6; Rodriguez Rec. at 21:05:51.

8

14.     Officers testified that they applied appropriate force to arrest Plaintiff and take him into custody given the attendant circumstances.  Filing No. 70-2 at 2–3, 4–5 ¶¶ 7–10, 16–18; Filing No. 70-4 at 2 ¶ 10; Filing No. 70-3 at 3 ¶ 10.

15.     Plaintiff alleges Officer Roehrich applied excessive force with his knee and then "stomped" on Plaintiff three times while the two engaged in specific dialogue quoted in his Complaint prior to the arrival of any other officers.  Filing No. 1 at 32 ¶ 20. Specifically, Plaintiff claims he told Roehrich, "Oh so since there's no one around you're gonna rough me up huh."  Filing No. 1 at 32 ¶ 20.  Plaintiff claims Officer Roehrich looked both ways and then stomped with the heel of his boot three times on Plaintiff's right shoulder blade area.  Filing No. 1 at 32 ¶ 20.

16.     The time-stamped recording from Officer Roehrich does not contain the statements alleged by Plaintiff, any sounds consistent with force, or complaints of pain prior to the arrival of other officers.  *See* Roehrich Rec. at 21:03:51 to 21:05:13.  The recording does contain two statements from Officer Roehrich that reflect his decision to wait for others to arrive before handcuffing Plaintiff, as well as the arrival of other officers. Roehrich Rec. at 21:03:38, 21:03:50.

17.     The medical records, which include notes from the emergency-room providers, indicates he "fell while running." Filing No. 70-5 at 10–11, 18.

18.     Upon arrival, Officer Rodriguez began speaking with Officer Roehrich and soon thereafter Officer Brooks pulled up in front of the gas station, with his cruiser pointed toward Plaintiff's Cadillac and Roehrich's cruiser.  Filing No. 70-4 at 2 ¶6; Filing No. 70-3 at 2 ¶ 6; Rodriguez Rec. at 21:06:01.

19.    Officer Roehrich proceeded to search Plaintiff's person in accordance with what he believed to be GIPD Policy.  Filing No. 70-2 at 3 ¶ 12; Rodriguez Rec. at 21:06:01; Filing No. 70-1 at 31–33.  He made no attempt to pull down Plaintiff's pants, which were loose around his waist.  Filing No. 70-2 at 3 ¶ 12.  Other officers searched the surrounding area since it had appeared Plaintiff discarded something while fleeing.  Filing No. 70-4 at 2 ¶ 6; Rodriguez Rec. at 21:06:01; Filing No. 70-3 at 2 ¶ 7.

20.    At this point, Plaintiff was still on the phone with the caller, which Officers claim impeded their investigative efforts and obstructed their plan to transport Plaintiff to jail.  Filing No. 70-4 at 2 ¶ 6; Filing No. 70-2 at 2-3 ¶ 9.

21.    Officer Rodriguez then grabbed the cell phone, which was laying in plain sight next to Plaintiff's head and placed it on the hood of Officer Rodriguez's cruiser. Filing No. 70-4 at 2 ¶ 6; Rodriquez Rec. at 21:07:33.  Rodriquez affirmed that he did not search the phone and the video does not show him searching the phone.  Filing No. 70-4 at 2 ¶ 6; Rodriquez Rec. at 21:07:33.

22.    Plaintiff was helped to a standing position, then escorted to Officer Roehrich's police cruiser and placed in the backseat.  Roehrich Rec. at 21:09:15; Filing No. 70-2 at 3 ¶ 12; Filing No. 70-4 at 2 ¶ 7.

23.    Given Plaintiff's custodial arrest, the officers undertook steps to have the Cadillac towed and inventoried its contents.  Filing No. 70-2 at 3 ¶ 13; Filing No. 70-4 at 2 ¶ 8; Filing No. 70-3 at 2 ¶ 8; Filing No. 70-1 at 36–37.

24.    Officer Roehrich and Officer Brooks prepared to conduct an inventory search of the Cadillac to identify items of value, protect against claims of lost property, and safeguard any potentially dangerous items.  Filing No. 70-2 at 3 ¶ 13; Filing No. 70-

10

3 at 2 ¶ 8.  In doing so, they also detected a smell emanating from the vehicle that they recognized to be marijuana, based on their training and experience.  Filing No. 70-2 at 4 ¶ 14; Filing No. 70-3 at 2 ¶ 8.

25.    The scope of the vehicle search included both the passenger compartment and trunk area.  Filing No. 70-2 at 3 ¶ 13; Filing No. 70-3 at 2 ¶ 8; Filing No. 70-1 at 36–37.  The officers created an inventory before the vehicle was towed away.  Filing No. 70-2 at 12; Filing No. 70-3 at 2 ¶ 8.

26.    As their investigative efforts continued, Officer Roehrich became aware from the information that was (and was not) available to him that there was no valid proof of insurance and that Plaintiff's driver's license was suspended—both of which are violations of state law.  Filing No. 70-2 at 4 ¶ 14; *see also* Neb.Rev.St. § 60–3,167; Neb.Rev.St. § 60–4,108.

27.    Plaintiff informed Officer Roehrich that he was experiencing pain in his shoulder.  Filing No. 70-2 at 4 ¶ 15.  Per Plaintiff's request, Officer Roehrich transported him to St. Francis Medical Center for evaluation.  Filing No. 70-2 at 4 ¶ 15.  Medical notes from Plaintiff's visit include multiple references to him falling while fleeing from police and attribute his injury to that fall.  Filing No. 70-5 at 10–12, 18.  Plaintiff was then transported to jail without incident after receiving medical clearance.  Filing No. 70-2 at 4 ¶ 15.

28.    Officer Rodriguez could not recall retrieving the cell phone from the hood of his cruiser before driving away, and his dash camera shows it still there when he returned to his cruiser and deactivating his lights before driving away.  Filing No. 70-4 at 2 ¶ 9; Rodriquez Rec. at 21:07:33-7:56.  Upon learning the phone could not be located, Officer Rodriguez remembered this and returned to the scene to search for it but could not locate

11

it.  Filing No. 70-4 at 2 ¶ 9.  Officers believed the phone was inadvertently lost.  Filing No. 70-4 at 2 ¶ 9.

29.     Officer Roehrich advised Plaintiff of his ability to file a claim.  Filing No. 70-2 at 5 ¶ 19.

30.     Plaintiff was arrested pursuant to a federal warrant on or about April 19, 2018, and then charged with distributing a controlled substance for events that occurred on October 18, 2017.  Filing No. 70-1 at 3–4 ¶ 12; *see also United States v. Smith*, 4:18-CR-3043 (D. Neb.).

31.     It is GIPD's policy for officers to comply with the law.  Filing No. 70-1 at 3 ¶ 8.

32.     GIPD has a Management and Operations Manual ("Manual") that contains provisions on multiple subjects and situations, including but not limited to training, arrests, searches of persons, use of restraints, inventories, and use of force.  Filing No. 70-1 at 2 ¶ 4.

33.     All GIPD officers are required to complete certain training before permanent assignment—this is done both through the Nebraska Law Enforcement Training Center and the Field Training and Evaluation Program.  This training covers multiple topics, including arrests, searches, and force, and all Officers here had completed it.  Filing No. 70-1 at 2 ¶ 5; Filing No. 70-1 at 25–26; Filing No. 70-2 at 1 ¶ 3; Filing No. 70-4 at 1 ¶ 3; Filing No. 70-3 at 1 ¶ 3.

34.     Captain Elliott was not aware of any pattern or practice in which GIPD officers violated the Manual or the Constitution in the way alleged by Plaintiff.  Filing No. 70-1 at 3 ¶ 8.

## III.  DISCUSSION

### A.  Plaintiff's Federal Claims

#### 1. Claim for Unlawful Search of Vehicle

Plaintiff does not refute Defendants' evidence that the post-arrest search of Plaintiff's vehicle complied with the Fourth Amendment.  Plaintiff argues that the search was not supported by the inventory exception or by probable cause.   Plaintiff does not offer legal or evidentiary support for either argument to defeat summary judgment. Plaintiff argues the search was not a valid inventory search because the "search could've been conducted at the police impound lot."  Filing No. 80 at 3.

"Inventory searches are one of the well-defined exceptions to the warrant requirement of the Fourth Amendment." *United States v. Frasher*, 632 F.3d 450, 454 (8th Cir. 2011).  No warrant is required, and the search is valid so long as it is reasonable and there is a standardized procedure in effect.   *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993); *United States v. Green*, 929 F.3d 989, 992 (8th Cir. 2019).   This is so even when officers take custody of the vehicle at the scene.  *See, e.g., United States v. Martin*, 982 F.2d 1236 (8th Cir. 1993) ("Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard.").

In this case, officers involved testified they conducted the inventory search in compliance with GIPD's established policy.  Filing No. 70-2 at 3 ¶ 13; Filing No. 70-3 at 2 ¶ 8.  Plaintiff cites no law or evidence to suggest officers did not comply with standardized procedure or that searching the vehicle on the scene violated the Fourth Amendment. Plaintiff has not put forth evidence to defeat summary judgment.

Plaintiff also failed to refute Defendants' evidence that they had probable cause to search the vehicle.  It is axiomatic that if officers have probable cause, no warrant is required to search a suspect's vehicle and officers may search every part of the vehicle that may be relevant.  *See United States v. Ross*, 456 U.S. 798, 825 (1982).  The Eighth Circuit has concluded the scent of marijuana gives rise to probable cause.  *See United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000).  In this case, officers initiated a traffic stop because of the suspicious license plate on Plaintiff's vehicle.  Thereafter, both Officers Roehrich and Brooks testified that they detected the scent of marijuana.  Filing No. 70-2 at 4 ¶ 14; Filing No. 70-3 at 2 ¶ 8.  Plaintiff did not attempt to rebut Defendants' evidence of probable cause, much less put forth evidence to defeat summary judgment.

Defendants submitted evidence that they performed a legal inventory search and had probable cause of criminal activity sufficient to search Plaintiff's vehicle.  Plaintiff has not refuted Defendants' evidence.  Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim for unlawful search of his vehicle.

### 2. Claim for Unlawful Search of his Person

Plaintiff asserts for the first time in his opposition brief that Defendants unlawfully searched his person.  Filing No. 80 at 7–10.  The Court will not address this claim because it was not alleged in Plaintiff's Complaint, Filing No. 1.  Accordingly, this claim was not assessed during the Court's initial review and no such claim was allowed to proceed to process.  *See* Filing No. 9 at 6-7, 17.

### 3. Seizure and Loss of Plaintiff's Cell Phone

Plaintiff's claims related to the seizure and misplacement of his cell phone cannot survive summary judgment.  As a preliminary matter, Plaintiff has not adequately

14

responded or refuted Defendants' evidence that seizure of the cell phone was reasonable under the Fourth Amendment. A "seizure" occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992). A seizure of property—even those without a warrant—may still be valid so long as the seizure was reasonable. *See PPS, Inc. v. Faulkner Cnty., Ark.*, 630 F.3d 1098, 1102 (8th Cir. 2011).

Plaintiff has not shown that the seizure was unreasonable. First, Plaintiff no longer argues that he was unlawfully arrested. *See* Filing No. 80 at 26; Filing No. 69 at 30-32; *see also* Neb. Rev. Stat. § 28-906; *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006) (stating that an individual who fled officers created probable cause to arrest him under § 28-906). Because officers have shown they had probable cause to arrest Plaintiff, seizure of the phone was appropriate. *See Gilmore v. City of Minneapolis*, 837 F.3d 827, 838 (8th Cir. 2016) ("Because [plaintiff's] arrest was not unconstitutional, the seizure of his sign was also valid." (collecting cases)); *Moreno v. Turner*, 572 F. App'x 852, 853 (11th Cir. 2014) (affirming summary judgment for warrantless seizure of "personal articles" since "the warrantless arrest was supported by at least arguable probable cause"); *United States v. Gravitt*, 484 F.2d 375, 378 (5th Cir. 1973) ("This Court has consistently recognized that the fourth amendment is not violated when the police take custody of the property of persons they arrest to store that property for safekeeping.").

Plaintiff's claim appears to center on the due process argument that "his phone was taken and not returned to him." Filing No. 80 at 27. The Supreme Court has noted that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Davidson v. Cannon*, 474

U.S. 344, 348 (1986). "In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Id.* at 347; *see also id.* at 348 ("As we held in [*Daniels v. Williams*, 474 U.S. 327, 331 (1986)], the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."); *Griffin v. Hilke*, 804 F.2d 1052, 1055 (8th Cir. 1986) ("Thus a plaintiff must show more than mere negligence to recover for a due process violation under section 1983.").

This Court has recognized that negligent loss of property cannot serve as the basis for a claim under the Due Process Clause. *See Jones v. Nebraska Dep't of Corr. Servs.*, No. 4:05CV3125, 2007 WL 1290074, at *5 (D. Neb. Mar. 12, 2007) (dismissing a procedural due process claim where officials "negligently misplaced some of the plaintiff's personal property" because "negligent loss of plaintiff's personal property, negligent conduct does not violate the Due Process Clause.").

Defendants admit that Plaintiff's phone was lost when Officer Rodriguez placed the phone on the hood of his cruiser and then drove away, forgetting to retrieve the phone. Filing No. 70-4 at 2, ¶¶ 6, 9. However, there is no evidence that the phone was permanently seized or intentionally lost. The evidence in the record only supports a finding the phone was negligently misplaced and, as noted above, negligence cannot support a claim under the Due Process Clause. For this loss, Plaintiff has an adequate post-deprivation remedy through a tort action. *See Hudson v. Palmer*, 468 U.S. 517, 540 (1984) (O'Connor, J., concurring) (noting that "improper inventories, defective receipts, and missing property have long been redressable in tort by actions for detinue, trespass to chattel, and conversion."). Because there is no evidence that Plaintiff's phone was

16

intentionally or illegally misplaced, he cannot support a claim for deprivation of Due Process under § 1983.

### 4. Excessive Force

Plaintiff's excessive force claim must be dismissed because the evidence in the record does not support his allegations. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999). "An officer's use of excessive force violates the Fourth Amendment if 'objectively unreasonable.'" *Wilson v. Lamp*, 901 F.3d 981, 989 (8th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Whether officers' actions were objectively unreasonable is "'judged from the perspective of a reasonable officer on the scene,' in light of 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). "Force may be objectively unreasonable when a plaintiff does not resist, lacks an opportunity to comply with requests before force is exercised, or does not pose an immediate safety threat." *Id.* (citing *Smith v. Kansas City, Missouri Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009)).

Plaintiff has not presented sufficient evidence to support his excessive force claim. First, as discussed above, Plaintiff failed to provide a "concise response" with "pinpoint references" to dispute Defendants' Statement of Facts, in violation of Local Civil Rule 56.1. Accordingly, Defendants' facts related to the force used on Plaintiff—so long as such facts are not legal conclusions—are considered admitted under NECivR 56.1(b)(1).

Second, much of the evidence Plaintiff offers to support his claim is either inadmissible or irrelevant for purposes of summary judgment. For example, Plaintiff repeatedly alleges in his brief that officers subjected him to "grinding," "kicking," "tackling," or "stomping." However, to support these allegations he cites primarily to his unverified Complaint. *See, e.g.,* Filing No. 80 at 11, 14 (citing Filing No. 1 at 30, 32). As noted above, allegations in a complaint are not evidence for purposes of defeating summary judgment. *See Thomas,* 483 F.3d at 526 ("The party opposing summary judgment cannot rest solely on the pleadings."); *Tweeton,* 287 F. App'x 541 ("[B]ecause his complaint was unverified, it could not be considered as such evidence.").

Additionally, Plaintiff's references to other evidence in the record do not support his assertions. For example, Plaintiff relies on medical records to show a reasonable jury could conclude—based on the extent of Plaintiff's injuries—officers used excessive force. *See* Filing No. 80 at 20–21. However, even ignoring the authentication issues that render Plaintiff's medical records inadmissible, the records do not support any contention that his injuries were the result of excessive force. Plaintiff references notations in his records that merely repeat Plaintiff's allegations of how he incurred his injuries. *See* Filing No. 82 at 14 ("He [Plaintiff] states the police officer handcuffed him and then when he was on the ground dug his foot into his right shoulder."); Filing No. 82 at 15 (listing Plaintiff's chief complaint as a broken clavicle "after being kicked into [sic] the shoulder blade with a boot."). These notations reflect Plaintiff's allegations as to the source of his injuries but do not, by themselves, create an issue of fact as to whether officers used excessive force.

Finally, even ignoring the lack of evidence supporting Plaintiff's claim, the Court's independent review of the evidence—particularly the audio and video recordings—

contradict Plaintiff's account.  In assessing summary judgment on an excessive force claim, the Supreme Court has said that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine dispute of material fact.").  Courts examine multiple evidentiary sources to determine whether a genuine issue of material fact exists.  *See McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020) (looking to taser logs and plaintiff's admissions to assess qualified immunity in an excessive force claim); *White v. Jackson*, 865 F.3d 1064, 1077 (8th Cir. 2017) (citing *Scott*, 550 U.S. at 380) (summary judgment was proper on excessive force claim because sounds in audio recording did not indicate threatening language, a scuffle, or anything like the assault the plaintiff alleged).

Plaintiff asserts that evidence in the record creates a triable issue as to the extent and necessity of forced used in effectuating his arrest.  Plaintiff acknowledges that he fled from officers but argues that once he submitted to Officer Roehrich, he complied with commands to kneel on the ground and place his hands on his head.  Filing No. 80 at 11. Plaintiff claims that after he knelt, Roehrich tackled him.  *Id.*  Plaintiff alleges Officer Roehrich then pressed his knee into Plaintiff's back and then "stomped" on Plaintiff prior to the arrival of any other officers.  Filing No. 1 at 32 ¶ 20.  Plaintiff alleged he told Roehrich, "Oh so since there's no one around you're gonna rough me up huh."  Filing No.

19

1 at 32 ¶ 20.  Plaintiff alleged Officer Roehrich then looked both ways and then stomped with the heel of his boot three times on Plaintiff's right shoulder blade area.  Filing No. 1 at 32 ¶ 20.  Plaintiff claims the scuffle can be heard on the audio recording.  Filing No. 80 at 11.

The Court has thoroughly reviewed the audio and video recordings of the incident in this case and concludes no reasonable jury could find any evidence of the assault Plaintiff alleged.  The audio recording from Officer Roehrich's body microphone captured the audio of the initial interaction with Plaintiff.  None of the statements Plaintiff alleged can be heard, nor are there any sounds consistent with force, or complaints of pain prior to the arrival of other officers.  *See* Roehrich Rec. at 20:02:53-21:05:25.  The only statements that can be heard from the audio were Officer Roehrich's statements that he would wait for others to arrive before handcuffing Plaintiff, as well as the arrival of other officers.  *See* Roehrich Rec. at 21:03:38, 21:03:50.

No reasonable jury could credit Plaintiff's version of the events.  Plaintiff submits no admissible evidence to support his assertions and the Court's review of the audio reveals no evidence of Plaintiff's alleged dialogue with Roehrich nor is there any indication of a scuffle.  Much less the type of scuffle that would have resulted in the injuries Plaintiff alleges.  The only admissible evidence in the record shows officers applied force necessary to arrest Plaintiff and take him into custody given the attendant circumstances.  Filing No. 70-2 at 2–3, 4–5 ¶¶ 7–10, 16–18; Filing No. 70-4 at 2 ¶ 10; Filing No. 70-3 at 3 ¶ 10.  The evidence Plaintiff offers amounts to "[m]ere allegations, unsupported by specific facts or evidence beyond [Plaintiff]'s own conclusions," and he therefore cannot withstand a motion for summary judgment on his excessive force claim.  *See Reed v. City of St.*

*Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)).

### 5. Failure to Train or Supervise

Plaintiff's claim for inadequate training or supervision derives from his other alleged constitutional violations. A § 1983 plaintiff cannot maintain a claim for inadequate training or supervision predicated on unsuccessful claims against individual officers. *Reed*, 561 F.3d at 792. Accordingly, Plaintiff's claims against Captain Elliott and the City of Grand Island for inadequate training or supervision cannot proceed.

Moreover, Plaintiff has not produced any evidence of an unconstitutional pattern or practice. For Plaintiff to succeed on his claim, he must produce evidence that Captain Elliott and the City "received notice of a pattern of unconstitutional acts" and were "deliberately indifferent" to those acts. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). In an apparent attempt to show a pattern, Plaintiff submitted the affidavit of Kadrien A. Whaley who testified that she witnessed Defendant Roehrich assault Plaintiff on a previous occasion. Filing No. 82 at 7. Even ignoring the numerous evidentiary issues of Whaley's affidavit—such as the lack of foundation or background information— the incident described would be insufficient to show either notice or deliberate indifference. *See Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 624 (8th Cir. 2021) ("A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability."); *Brewington v. Keener*, 902 F.3d 796, 802– 03 (8th Cir. 2018) (affirming summary judgment, holding: "[T]wo incidents of excessive force—even if assumed to be true—cannot be considered a pattern of widespread and pervasive constitutional conduct…. Under our precedent, a single incident cannot serve

as notice for a pattern of misconduct.").  Plaintiff has not produced admissible evidence of a pattern or practice of unconstitutional conduct.

## B.  Plaintiff's State Law Claims

A federal district court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over claims arising under state law after dismissal of the claim(s) over which the court has original jurisdiction. The Court noted in its Memorandum and Order on initial review that it would consider exercising supplemental jurisdiction over Plaintiff's numerous state law tort claims if Plaintiff's federal claims survived motion practice.  Filing No. 9 at 16.  For the reasons stated above, Plaintiff's federal claims are dismissed.  Accordingly, the Court will not exercise supplemental jurisdiction over the state law claims and they will also be dismissed without prejudice.

## IV.  CONCLUSION

Plaintiff has failed to present admissible evidence creating a triable issue of fact as to any of his remaining federal claims.  Because Plaintiff's federal claims will be dismissed, the Court will not exercise supplemental jurisdiction over the state law claims. Accordingly, for the reasons stated, Defendants Motion for Summary Judgment will be granted, and Plaintiff's federal law claims will be dismissed with prejudice and his state law claims will be dismissed without prejudice.

IT IS THEREFORE ORDERED that:

1.     Defendants' Motion to Strike, Filing No. 88, is denied as moot;

2.     Defendants' Motion for Summary Judgment, Filing No. 68, is granted;

3.     Plaintiff's federal law claims are dismissed with prejudice;

4.      The Court declines to exercise supplemental jurisdiction over Plaintiff's

state law claims, and such claims are dismissed without prejudice; and

5.      A separate judgment will be entered.

Dated this 23rd day of January, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge